**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark A. HARRIS, Defendant–Appellant.**

Nos. 89–6133, 89–6181.

United States Court of Appeals,
Tenth Circuit.

May 16, 1990.

Mary E. Bane, Oklahoma City, Okl., for defendant-appellant.

Nancy S. Jones, Asst. U.S. Atty., (Robert E. Mydans, U.S. Atty., W.D. Okl., with her on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and SAFFELS, District Judge.*

SAFFELS, District Judge.

Defendant–Appellant Mark A. Harris was charged in a three count indictment. Count I charged possession with intent to distribute three-quarters pound of marijuana in violation of 21 U.S.C. § 841(a)(1); Count II charged that defendant traveled in interstate commerce to facilitate possession of marijuana with intent to distribute in violation of 18 U.S.C. § 1952(a)(3); and Count III charged forfeiture of U.S. currency, silver bars and coins seized from four locations under 21 U.S.C. § 853. The trial in this case began on January 31, 1989. The jury returned a verdict of guilty on Counts I and II on February 7, 1989, and a verdict of partial forfeiture on Count III on February 8, 1989.

## FACTS

On January 27, 1988, a Oklahoma Highway Patrol trooper stopped a truck driven by defendant for defective taillights. De-

---

* The Honorable Dale E. Saffels, District Judge, United States District Court for the District of Kansas, sitting by designation.

fendant sat in the patrol car while the trooper was writing a warning ticket. The trooper detected the odor of marijuana and obtained the defendant's written consent to search the truck. The search resulted in the discovery of brown containers and several large plastic trash bags each with marijuana residue inside. Rolling papers and roach clips were also discovered. Thereafter, defendant was placed under arrest. The truck was impounded and an inventory search was conducted which revealed three boxes of ziplock bags, plastic bags containing traces of marijuana leaves, two plastic bags containing marijuana seeds, a bag of rubber bands, rolling papers, roach clips, four gold coins and U.S. currency in excess of $400,000 placed in five grocery sacks. These items can be characterized as general drug trafficking paraphernalia. After defendant was advised of his *Miranda* rights, the FBI conducted an interview of the defendant. During this interview, defendant told an agent that at the time of arrest he was traveling through Oklahoma to his home in Texas returning from a trip to Maryland.

On January 29, 1988, a search warrant was obtained and another search of defendant's truck was conducted. This search resulted in the seizure of a silver metal box containing 19 marijuana cigarettes, rolling papers, roach clips, newspapers from Virginia, and motel receipts from Tennessee and Virginia. On February 8, 1988, search warrants were issued for two safe deposit boxes registered in defendant's name at banks in Texas. The searches of these boxes recovered silver and gold coins and currency in excess of $300,000. On February 12, 1988, three additional search warrants were issued: one for a third safe deposit box and one for defendant's home, and one for a ranch, of which defendant was a co-owner. Defendant raises numerous issues on appeal.

## DISCUSSION OF ISSUES ON APPEAL

### A. *The Travel Act Violation.*

■ Defendant contends the government presented insufficient evidence at trial to support a finding that he violated the Travel Act, 18 U.S.C. § 1952(a)(3). The essential elements of this crime are: (1) defendant used facilities of interstate commerce, (2) with intent to promote, manage, establish, carry on or facilitate any unlawful activity, and (3) the performance or an attempt to perform that unlawful activity. *United States v. Stevens*, 612 F.2d 1226, 1231 (10th Cir.1979), *cert. denied* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). The third element requires an overt act in furtherance of the illegal activity, performed after the interstate travel. *Id.*

■ In the present case, this court finds that sufficient evidence was presented to find a violation of this Act. The illegal activity charged was possession of marijuana with intent to distribute. Defendant traveled into Oklahoma from Maryland, Virginia, and Tennessee. He performed various overt acts in furtherance of the crime charged after arriving in Oklahoma, including possessing and transporting a quantity of marijuana with the intent to distribute it and possessing and transporting paraphernalia relating to marijuana trafficking. *See United States v. Sanchez DeFundora*, 893 F.2d 1173, 1176–77 (10th Cir.1990) (possession of cocaine constitutes an overt act for the purposes of the Travel Act).

### B. *Validity of the Search Warrants.*

After defendant's arrest, five search warrants were issued in Texas. Three for safe deposit boxes, one for defendant's home and one for a ranch co-owned by defendant.

#### 1. Whether The Warrants Were Based On Probable Cause.

Defendant contends that no probable cause was shown that evidence would be found at the locations to support the issuance of the five search warrants in Texas. The places to be searched in the five search warrants, which were issued at least twelve days after defendant's arrest, were over 700 miles away from where defendant was arrested. The first two search warrants were issued on February

8, 1988, to search two safe deposit boxes. Defendant contends that the affidavit submitted in support of these search warrants set forth no facts that could support a reasonable belief that the items sought would be located in the safe deposit boxes.

In finding that probable cause existed to support the search warrants, the magistrate stated that although the places to be searched were over 700 miles away from where the defendant was arrested, it was logical and reasonable to believe that defendant was heading toward his home in Texas, at the time of his arrest, and that the large amount of cash he was carrying in his truck would not be left in his truck. The fact that defendant had more than one safe deposit box also caused the magistrate to conclude that there was probable cause to search the safe deposit boxes for other evidence of a narcotic business in which defendant was allegedly involved.

■■■ A search generally must be made pursuant to a warrant based on probable cause. U.S. Const. amend IV. The court when reviewing a magistrate's issuance of a search warrant must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The magistrate must make a practical, common sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238, 103 S.Ct. at 2332. The affidavits in support of the February 8, 1988, search warrants of the safe deposit boxes indicate that at the time of defendant's arrest he had handwritten ledger-type notes, a large quantity of U.S. currency, and numerous containers and plastic bags with marijuana residue. Also defendant was traveling towards his home in Ingram, Texas. These facts together with common sense provide sufficient probable cause to support the magistrate's determination that a fair probability existed that evidence of a marijuana trafficking operation might be found in the safe deposit boxes. Three additional search warrants

were issued on February 12, 1988, to search defendant's home, a ranch he co-owned, and a third safe deposit box. The affidavits in support of these warrants included the same information as given in the previous affidavit plus information that defendant had purchased large floor safes and that defendant's co-owners in the ranch were individuals who had prior involvement in drug activity and that in a fly-over observation of the ranch, an officer had seen the burning of green plant material which appeared to be marijuana. The affidavits set forth sufficient grounds to support a probable cause finding for issuance of the search warrant for these locations.

### 2. Whether the Warrants Were Overbroad.

Defendant contends that the five Texas warrants were overbroad and did not give the executing officers sufficient guidance on what evidence was to be seized. The warrants listed seven categories of items to be seized: (1) travel records and receipts; (2) bank safe deposit records; (3) currency; (4) stocks, bonds or other securities; (5) gold, silver and/or jewelry; (6) books, records, memorandum, notes, bank records, investment records, or any other documents evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or money obtained through illegal means, the source of which has been attempted to be hidden from the government in effort to circumvent, thwart, conceal or otherwise impair and impede the U.S. government; and (7) marijuana and/or processing and/or packaging material for marijuana.

■■■ The issue of whether a warrant is overbroad is a legal question subject to *de novo* review on appeal. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988). The fourth amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A search warrant must be sufficiently particular in describing the things to be seized to prevent a "general, exploratory rummag-

ing in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The description is sufficiently particular when it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Leary*, 846 F.2d at 600 (quoting *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir.1982)). A warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988) (quoting *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir.1985)).

■ Defendant contends that the warrant does not limit the search to any alleged violation of a particular criminal law. However, the affidavit attached to and incorporated by reference in the warrants did state the alleged crime under investigation. Thus, the warrants are not overbroad for failure to specify a crime to which the sought evidence relates. Also, defendant contends that the warrants failed to provide adequate limitations or guidelines to officers executing the warrants. Defendant contends that the language in the warrants was so overbroad as to allow general rummaging through defendant's documents, records, and property. The district court found the portions of the warrants calling for seizure of books and records were legitimate because the warrants limited the search to those documents evidencing some type of money laundering operation which would be necessitated by a major drug business.

This court finds that the warrants, although worded in very broad and general terms, do not violate the fourth amendment. "When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." *Spinelli v. United States*, 382 F.2d 871, 886 (8th Cir.1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also*

*United States v. Dennis*, 625 F.2d 782, 792 (8th Cir.1980) (upholding a warrant which called for the seizure of "certain books and records relating to the extortionate credit transaction business"). The type of criminal activity under investigation in the present case—a drug dealing business—makes it difficult to list with any greater particularity the books and records desired to be seized which evidences such activity. *See United States v. Morisse*, 660 F.2d 132, 136 (5th Cir.1981) (upholding the validity of a warrant providing for search and seizure of "drug trafficking paraphernalia, records, money, and other evidence of drug trafficking"). Thus, we agree with the district court that the warrants described the items to be seized as specifically as possible under the circumstances.

C. *Expert Testimony Regarding Records of Drug Sales.*

The trial court allowed FBI Agent David Stenhouse to testify as an expert witness regarding the issue of whether three documents in evidence had characteristics consistent with records of a drug business. Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court found Special Agent Stenhouse qualified as an expert because of his "sufficiently extensive" on-the-job training. Special Agent Stenhouse has been on special assignment with the Drug Records Analysis Sub-unit of the FBI Laboratory Documents Section since April 1985. His job responsibilities include the examination of records submitted to the lab that are believed to be clandestine in nature, including drug records. Special Agent Stenhouse testified that the documents seized in this case had characteristics similar to those found in documents known to be used in drug enterprises.

■ The trial court did not commit error in allowing the FBI agent to testify as an expert. A trial court's determination of the witness's qualification as an expert will not be disturbed unless it is clearly erroneous. *United States v. Posey*, 647 F.2d 1048, 1051 (10th Cir.1981). This court has recently held that an FBI agent could testify as an expert on the roles played by participants in a gambling operation. *United States v. Pinelli*, 890 F.2d 1461, 1474 (10th Cir.1989). This court noted, among other things, the average person's unfamiliarity with the professional gambling business. *Id.* We believe the reasoning of *Pinelli* is equally applicable to the situation in the present case. Special Agent Stenhouse's specialized knowledge regarding recordkeeping in the drug business assisted the trier of fact in understanding the evidence. The defense counsel, in this case, had adequate methods of cross-examining this witness. Moreover, the trial court properly and cautiously instructed the jury that the agent's testimony was merely his interpretation of the records and that it was within the jury's province to determine whether his interpretation was factually correct. *See United States v. Theodoropoulos*, 866 F.2d 587, 592 (3d Cir.1989). We find no error in the trial court's determination that Special Agent Stenhouse qualified as an expert on books and records involving drug transactions.

Defendant also argues that the testimony of the FBI agent was irrelevant and prejudicial under Rule 403 of the Federal Rules of Evidence. Defendant did not make or preserve these objections at trial. Thus, we will not consider these objections unless the grounds not raised before the trial court constitute plain error. *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir.1988). Since defendant has made no showing that the FBI agent's testimony resulted in plain error, this objection will not be considered any further.

D. *The Admission into Evidence of Defendant's Civil Forfeiture Claim to the Money Found in the Truck.*

■ Defendant contends that the trial court committed fundamental error in admitting evidence of defendant's civil claim to the seized money in a civil forfeiture proceeding. The trial court found this claim to be a judicial admission that the money was defendant's. Defendant contends that by allowing this into evidence, he was improperly forced to choose between making a claim on property he thinks is his or to remain silent regarding his interest, in accordance with his Fifth Amendment rights.

In a custodial interview conducted after defendant's arrest and after he waived his right to remain silent, defendant stated to FBI agents that the currency in the truck was owned by himself and another individual, whom he refused to identify. The government used the civil claim to the money, made by defendant's attorney on defendant's behalf, to show that the statement to the FBI agents was a false exculpatory statement. Such evidence is admissible to prove circumstantial consciousness of guilt or unlawful intent. *See United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir.1982), *cert. denied Porter v. United States*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983). We therefore find that the trial court did not abuse its discretion in admitting this evidence.

E. *Evidence of Other Crimes or Other Wrongs.*

Defendant contends that certain evidence of other crimes and other wrongs by the defendant was admitted in violation of Rule 404(b) of Federal Rules of Evidence. Specifically, defendant claims that the trial court improperly allowed the admission of photographs seized from his ranch showing growing and irrigated marijuana crops, evidence of money and precious metals seized from safe deposit boxes in Texas, defendant's tax returns and evidence of his failure to file any IRS Form 8300 (such forms are required for any cash transactions involving over $10,000), and the testimony of Agent Stenhouse regarding certain seized notes as being records of drug sales. The only objections at trial regarding the money and precious metals, defendant's tax

returns, and the testimony of Agent Stenhouse, were objections based on relevancy and probative value and prejudicial effect. We find no showing that the trial court abused its discretion in admitting this evidence.

▮▮▮▮▮ Furthermore, the trial court did not abuse its discretion in admitting the evidence to which a 404(b) objection was made, i.e., the photos of growing marijuana and defendant's failure to file a Form 8300. Photographs of the growing marijuana on defendant's ranch were properly admissible to show defendant's intent to distribute marijuana. Evidence of other wrongs can be admitted to show intent. Federal Rule of Evidence 404(b); *Orr*, 864 F.2d at 1511. Also, the evidence that the defendant has filed no Form 8300 was used to refute defendant's claim that he derived the large amount of cash from legitimate business sources, the sale of coins. Therefore, the use of this evidence was proper. *See United States v. Wood*, 834 F.2d 1382, 1386–87 (8th Cir.1987).

## F. *The Criminal Forfeiture of Property.*

▮▮▮▮ The jury returned a special verdict that the $413,493 in currency found in the truck was intended to be used to facilitate possession of marijuana with the intent to distribute. The jury further found, however, that the eighteen bars of silver and four gold coins in the truck were not. Accordingly, only the currency was forfeited pursuant to 21 U.S.C. § 853(a)(2).

On appeal, defendant argues that the instruction given to the jury on the forfeiture count was erroneous and that the forfeiture of the entire $413,493 is not proportionate to the crime. First, defendant argues that the instruction given by the court improperly allowed the jury to find forfeiture of the entire amount of currency rather than allowing the jury an opportunity to determine what specific amount of the currency was related to the criminal activity. The instruction informed the jury that property could not be the subject of forfeiture unless the government proved that defendant owned or had an interest in the property and that the property was used or

intended to be used to commit or facilitate the commission of the offense in question. The instruction further stated:

> Within a category of "an item of property," such as the category of currency, the government does not have to prove that everything in the category was "used or intended to be used" in the sense of this instruction. Proof that part of what is in the category was so used or intended to be used is sufficient.

Defendant argues that the jury should have been allowed to determine how much of the currency was used to facilitate possession of marijuana.

The forfeiture statute states that any person convicted of a violation of certain criminal statutes shall forfeit any property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(2). In enacting the criminal forfeiture statute, congress explicitly stated that the statute is to be liberally construed. 21 U.S.C. § 853(*o*). The Ninth Circuit Court of Appeals has ruled that the statutory language that property used "in any manner or part" to facilitate a crime is subject to forfeiture allows the forfeiture of property in its entirety even if only a portion of it was used for illegal purposes. *United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir.1987). We agree with this statement of law. Therefore, the trial court's instruction on the criminal forfeiture count was an adequate and a proper pronouncement of the law.

▮▮▮▮ Secondly, defendant contends that the forfeiture of the entire $413,493 does not bear a proper nexus to the crime of which he was convicted and that it is disproportionate to the crime. With regard to the statutory nexus requirement of 21 U.S.C. § 853(a)(2), a panel of this circuit has stated that "the only limitations on what property can be forfeited relate to the nexus with the illegal activity." *United States v. Nichols*, 841 F.2d 1485, 1492 (10th Cir.1988). Here, sufficient evidence existed for the jury to find that the currency was used or was intended to be used to facilitate the illegal activity. Thus, the

nexus test was satisfied and the forfeiture of the property should be upheld. With regard to the proportionality argument under the Eighth Amendment, we do not find that this forfeiture was disproportionate to the crime committed. We have considered the factors set forth in *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983), and when judged against those factors, this forfeiture is not violative of the Eighth Amendment requirement of proportionality.

G. *Whether the Sentence was Properly Imposed Under the Guidelines.*

■ Defendant was convicted of possession with the intent to distribute approximately three-quarters pound of marijuana. Prior to sentencing, the court conducted an evidentiary hearing and heard the testimony of Special Agent Stenhouse. He stated that according to his interpretation of the records seized on defendant at the time of his arrest in January 1988, defendant had in his possession approximately 801 pounds of marijuana during December 1987 and January 1988, and that this marijuana had been distributed by defendant. Defendant presented no evidence at this hearing. The court found, as fact, that the offense charged involved 801 pounds of drugs. Based on this finding, the court increased the base offense level from a level 8, for possession of three-quarters pound of marijuana, to a level 26, for 801 pounds of marijuana. Defendant contends that this increase in his base level resulted from an incorrect application of the sentencing guidelines.

First, the factual finding of the court must be upheld because there is no showing that it was clearly erroneous. Secondly, the trial court properly applied the sentencing guidelines. Section 2D1.1, note 12, states that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." This court has recently held that a sentencing judge may consider quantities of drugs involved in a crime but not charged in the indictment in determining the base offense level during sentencing under the sentencing guidelines. *United*

*States v. Ware,* 897 F.2d 1538, 1542–43 (10th Cir.1990) (citing cases from three other circuits). Therefore, we affirm the sentence imposed by the district court.

CONCLUSION

The conviction, forfeiture, and sentence of defendant-appellant is AFFIRMED.