61 F.3d 917
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Monte Morris FRIESNER, Defendant-Appellant.
 No. 94-5058.
 United States Court of Appeals, Tenth Circuit.
 July 25, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Friesner was convicted of twenty felony counts of wire fraud, money laundering and various crimes relating to the unlawful use of interstate commerce. He appeals his convictions asserting first, the evidence seized by virtue of a search warrant should have been suppressed, and second, he was prevented from presenting a defense.[2] We affirm.
 
 BACKGROUND
 
 3
 The evidence presented at trial established Mr. Friesner was a consummate fraud artist. He sought out potential victims who were seeking enormous loans. Mr. Friesner would then enter into contractual agreements requiring the prospective borrowers to deposit a large sum of money, usually $250,000, in an escrow account as a commitment fee, demonstrating their ability and devotion to obtaining the large loans. The borrowers understood these commitment fees were to be returned to them in the event Mr. Friesner could not secure a loan for them. They were further led to believe Mr. Friesner would obtain a commission fee from other sources. No loan transactions were ever completed and the funds deposited in escrow were purloined by Mr. Friesner.
 
 DISCUSSION
 1. Motion to Suppress
 
 4
 An FBI agent applied for a search warrant for Mr. Friesner's home. In the affidavit in support of the application, the agent specifically described the place to be searched (the home of Mr. Friesner) and alleged Mr. Friesner held himself out as an international financier who had perpetrated wire fraud on Canadian citizens through an advance fee scheme. The affidavit stated: (1) the only source of income of Mr. Friesner and his wife was his "advance fee" scheme; (2) phone calls, faxes, and mail relating to the scheme were sent from and received at Mr. Friesner's residence; (3) meetings concerning the scheme took place at Mr. Friesner's residence; and (4) the victims regarded Mr. Friesner's residence as his place of business. Additionally, the warrant lists the victims and financial institutions of Mr. Friesner's crimes as well as the names of the companies linked to Mr. Friesner by the FBI investigation. Attachment B to the affidavit listed items to be seized, which were basically financial records. A magistrate judge issued the search warrant and the warrant was executed. The return indicates fourteen boxes of documents and miscellaneous items were seized.
 
 
 5
 The requirements of a search warrant are set forth in the Fourth Amendment, which provides, in part, that "no Warrants shall issue, but upon probable cause, ... and particularly describing the place to be searched, and the ... things to be seized." U.S. Const. amend. IV. "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir.1985). There is, however, "a practical margin for flexibility permitted by the constitutional requirement of particularity in the description of items to be seized.' " In re Search of Kitty's East, 905 F.2d 1367, 1374 (10th Cir.1990) (citation omitted). A description is sufficient when the searcher is able to reasonably ascertain and identify the things authorized to be seized. United States v. Harris, 903 F.2d 770, 775 (10th Cir.1990). "[W]hen the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." Id. (citation omitted). With these principles in mind, we turn to the facts of this case. In so doing, we accept the district court's factual findings unless they are shown to be clearly erroneous; however, the question of a warrant's compliance with the requirements of the Fourth Amendment is reviewed de novo. See United States v. Dahlman, 13 F.3d 1391, 1394 (10th Cir.1993), cert denied, 114 S.Ct. 1575 (1994).
 
 
 6
 Mr. Friesner argues the warrant and Attachment B are fatally flawed on the ground they authorized an "all records" search. While acknowledging that under certain circumstances such a search is constitutionally permissible, Mr. Friesner argues "[t]he all records' doctrine however is limited when the warrant is to be executed on a person's home." Relying on United States v. Falon, 959 F.2d 1143 (1st Cir.1992), Mr. Friesner asserts the "all records" search of his home required "extraordinary proof" demonstrating his "entire life was consumed by fraud and that all records found in the home were subject to seizure."
 
 
 7
 Attachment B authorized the seizure of the following items:
 
 
 8
 1. Evidence of ownership and control of the premises;
 
 
 9
 2. Documents which would evidence money and/or concealed assets over which Monte Friesner had dominion and control....
 
 
 10
 3. Financial records, including: Cancelled checks; bank statements; deposit tickets, deposit items, wire transfer records, debit and credit memos; books, papers, records, documents, diaries, notations and memoranda, ledgers, files, journals and correspondence, showing his dealings with the following [specifically named individuals, lending institutions, and commercial entities].
 
 
 11
 4. Records showing the receipt, expenditure, or availability of currency; negotiable instruments or copies thereof, payable to, or remitted by, Monte Friesner [or in the names of the commercial entities allegedly established in furtherance of the scheme] for the period of January 1, 1989, to the present.
 
 
 12
 5. Records showing checking accounts, savings accounts, certificates of deposit, bank safety deposit box records, and/or brokerage account records at foreign or domestic financial institutions, in the name of Monte M. Friesner, [commercial entities allegedly established in furtherance of the scheme], for the period of January 1, 1989, to the present.
 
 
 13
 6. Receipts, invoices, correspondence, notes, ledgers, telephone and address books; bank records; letters; negotiable instruments; and/or other evidence or documents identifying other victims of Friesner in his "advance fee" loan procurement business.
 
 
 14
 7. The following computer hardware and software which is/are the means and instruments to store the data on, for, and related to the documents, records and evidence set forth [in] paragraphs one through six, above....
 
 
 15
 Unlike those warrants that have been invalidated by the courts as "all record" warrants, Attachment B specifies, as much as is reasonably possible, the records to be seized. Paragraphs 3, 4 and 5 specifically authorize the seizure of only those records bearing on the financial transactions of Mr. Friesner and the entities he established and/or dealt with in furtherance of the alleged fraudulent scheme and within a specific, defined time frame. Similarly, paragraph 2 limits the seizure of only those documents evincing concealed assets; paragraph 6 limits the seizure of documents to those relating to Mr. Friesner's fraudulent scheme; and paragraph 7 permits the seizure of computer records encompassed within the scope of information delineated in paragraphs one through six.
 
 
 16
 The limitations contained in Attachment B contrast starkly with the warrant at issue in Voss, which we invalidated because it was not restricted to evidence relating to the crimes alleged, but rather, provided what the district court called "carte blanche for government agents to take anything that they saw.' " Voss, 774 F.2d at 404 (citation omitted); see also United States v. George, 975 F.2d 72, 75 (2d Cir.1992) (invalidating a warrant provision permitting the seizure of "other evidence relating the commission of a crime" (emphasis added)); Falon, 959 F.2d at 1148 (invalidating a warrant authorizing the seizure of documents falling into the categories of "checkbooks," "cancelled checks," "telephone records," "calenders and diaries," and "word processors").
 
 
 17
 Here, while the warrant did speak generally to the items to be seized (books, records, etc.), it also included the names of victims, financial institutions, and companies implicated in the fraudulent scheme and relevant time frames. It is significant to note that these latter restrictions are of the type specifically identified by the Voss court as those that may render a record-search warrant valid. See Voss, 774 F.2d at 406 ("An example of an adequately drawn warrant provision may be gleaned from the government's warrants themselves. The last paragraph authorizes the seizure of all records, books, and documents relating to communications between persons conspiring to defraud the IRS.").
 
 
 18
 There can be no doubt, therefore, that the warrant did not permit an "all records" search. It was limited to particular documents bearing on the criminal activities of Mr. Friesner. We believe the warrant was sufficiently particularized to confine and limit the searcher's discretion by allowing him to "reasonably ascertain and identify the things authorized to be seized.' " Harris, 903 F.2d at 775 (citation omitted). This conclusion follows not only from a recognition of the express limitations contained in the warrant, but also from the manner in which the warrant was actually executed. Numerous boxes of records and documents were found at Mr. Friesner's residence that were neither seized nor searched. Indeed, the record before us reveals the vast majority of the records and documents observed at Mr. Friesner's residence were not seized. The relatively limited nature of the search and seizure of Mr. Friesner's records varies greatly from what would be expected in an all records search, and demonstrates the warrant was neither understood to countenance an "all records" search nor executed as such.
 
 
 19
 Accordingly, we reject Mr. Friesner's argument the warrant is invalid on the ground it authorized an "all records" search. We hold the warrant stated, with sufficient particularity, the items to be seized, and thus the district court did not err in denying the motion to suppress.
 
 2. Presentation of Defense
 
 20
 Mr. Friesner argues next that numerous evidentiary rulings of the district court amounted to a denial of due process. Specifically, he argues these rulings effectively prohibited him from mounting a defense. The district court disallowed the admission of certain documents and testimony into evidence on various grounds, including relevancy, hearsay and likelihood of confusing the jury. While Mr. Friesner cites numerous specific instances of challenged evidentiary rulings, he fails to articulate why any of these rulings were contrary to the applicable rules of evidence. Rather, Mr. Friesner simply cites authority recognizing that under certain circumstances, applicable rules of evidence need not be applied if to do so would violate a defendant's due process rights. See, e.g., Chambers v. Mississippi, 410 U.S. 284, 298-99, 302 (1973); United States v. Lopez-Alvarez, 970 F.2d 583, 588 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992).
 
 
 21
 The admission of evidence is a matter left to the sound discretion of the trial court, and thus we review evidentiary rulings for an abuse of that discretion. United States v. Rackstraw, 7 F.3d 1476, 1478 (10th Cir.1993). After a careful review of the record, we have no doubt that Mr. Friesner was afforded the opportunity to, and in fact did, present a defense and that the district court did not abuse its discretion in deeming the challenged evidence inadmissable.
 
 
 22
 Mr. Friesner does not allege he was prevented from putting on any witnesses. The record reveals that of 3,257 pages of testimony and related proceedings which comprise the record before us, 728 of those pages consist of Mr. Friesner's testimony alone. Another 346 pages consist of the testimony of defense witnesses. While Mr. Friesner cites a number of instances in which documents were not allowed into evidence, the record reveals that literally hundreds of pages of defense documents were admitted. Mr. Friesner was permitted to testify and submit documents in support of his good faith defense. In addition, we note Mr. Friesner does not attempt to demonstrate how or why the outcome of his trial would have been any different had the challenged testimony or documents been admitted into evidence. See United States v. Mann, 884 F.2d 532, 538 (10th Cir.1989) ("The court did not prevent [Mann] from mounting a defense ... but rather exercised its discretion regarding the form in which such evidence should be admitted so as to minimize jury confusion."); United States v. Harrold, 796 F.2d 1275, 1284 (10th Cir.1986) (holding that because the excluded evidence was basically cumulative, any error in disallowing the evidence was harmless), cert. denied, 479 U.S. 1037 (1987).
 
 
 23
 Our review of the record convinces us Mr. Friesner was not denied due process by being prevented from mounting his defense. Mr. Friesner's convictions are, therefore, AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Mr. Friesner, though represented by counsel, has moved to submit a supplemental brief to this court. We grant that motion. Our review of the contentions contained therein, however, reveals them to be without merit