**Jerry Lee MARSHALL and William T. Edwards, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 30, 1972.

William G. Kenton, Shuffett, Kenton & Anderson, Lexington, for appellants.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

Griffith's Market, located in a densely settled section of Lexington, had been the target of so many break-ins that its management had an electronic detection system installed, which was switched on at the close of the working day. The electrodes noiselessly relayed sounds from the store over a telephone circuit to a control evaluation agency which, in turn, notified police immediately when the sounds suggested a break-in was in progress. On the occasion here in question, the police had checked the front and rear of the store less than ten minutes before receiving a radio dispatch to return, and had found nothing wrong on that first visit. But on their return, they found boards pulled off the back of the store, found a sledge hammer, a rusted hatchet, a tire tool and a pair of unmatched gloves on a nearby trash heap, and saw two men on the sidewalk in back of the store, who took off running when they realized the police had returned, but stopped running after warning shots from the officers. The men were the appellants, Jerry Lee Marshall and William T. Edwards, the first victims of Griffith's Market's electronic detection system.

Marshall and Edwards were indicted for possession of burglary tools in violation of KRS 433.120 which authorizes punishment from two to ten years in prison on a finding of guilt; and for attempted breaking and entering, a common law offense (Roberson, Criminal Law, Section 248), punishable under KRS 431.075 at a maximum of a year in jail, a fine not to exceed $5,000, or both. The accused men pled not guilty, but were found guilty on each charge, receiving the maximum penalty of ten years' imprisonment for possessing burglary tools with the intent to use them burglariously, and receiving the maximum jail sentence for the attempted break-in.

The burglar tools, found near where the appellants were seen crouched near the sidewalk at the back of the store at approximately 2:30 A.M. that cold Feb-

ruary morning, disclosed no finger-prints or other evidence which directly connected the tools with the appellants. The convictions are based on circumstantial evidence which able appointed counsel asserts is as consistent with innocence as it is with guilt. We think the skein of circumstances was sufficient to take the case to the jury, and a directed verdict for the accused would not have been proper.

■ The prosecution obtained consent of the trial court to introduce the criminal records of the appellants as substantive evidence of their intent to burglarize the market, to show that they were the kind of characters who would do such a thing, and were not hardy, honest citizens having a casual social visit in back of the market at 2:30 A.M. on a cold morning. For example, it was shown that Marshall had convictions between 1953 and 1971 which involved disorderly conduct, receiving stolen property, drunkenness, carrying concealed a deadly weapon (two convictions), burglary, storehouse breaking, grand larceny (two convictions), and breach of peace (four convictions). .Edwards, comparatively, was a tenderfoot, with just one conviction of grand larceny and one of knowingly receiving stolen goods, and a record as a juvenile delinquent.

The best we can say for this evidence of past records is that it indicates that the appellants were men morally capable of burglarizing Griffith's Market at various times in their lives, but not that they necessarily intended to do it the night in question. Their specific intent on the night of the current crimes must be inferred from circumstances in which they were found at that particular time and place, and not from their past records. We think the law in this area was well summarized by Judge Walter V. Schaefer of Illinois in People v. Lehman, 5 Ill.2d 337, 125 N.E.2d 506 (1955):

"Evidence of other crimes is objectionable 'not because it has no appreciable probative value, but because it has too much.' (I Wigmore, Evidence, 3rd ed., sec. 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded. But where the evidence is independently relevant it is admissible as, for example, where it shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design. I Wigmore, Evidence, 3rd ed., sec. 216."

The extent of the punishment imposed—maximum incarceration on each of the charges—suggests but, of course, does not necessarily establish the prejudicial effect of the objectionable evidence. Nevertheless, it was a violation of fundamental trial policy to admit the criminal records of the appellants as substantive evidence of their specific intent to commit the present crimes for which they were being tried, and as a consequence the judgments of convictions are reversed for a new trial.

All concur.