George WALKER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–SC–0407–MR.

Supreme Court of Kentucky.

Aug. 23, 2001.

---

1. Ky.App., 598 S.W.2d 465 (1980).

2. Ky., 949 S.W.2d 594 (1997).

3. Ky., 949 S.W.2d at 597.

Emily Holt, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant.

A.B. Chandler III, Attorney General of Kentucky, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

## OPINION OF THE COURT

JOHNSTONE, Justice.

George Walker was convicted of first-degree trafficking in a controlled substance, tampering with physical evidence, and second-degree persistent felony offender. He was sentenced to ten years' imprisonment on both the trafficking and the tampering charges. The sentences were ordered to run consecutively, for a total of twenty years. He appeals to this Court as a matter of right. We affirm.

The events leading to Walker's arrest begin with the arrest of one Robert Minter for driving without a license and possession of crack cocaine. Upon arrest, Minter agreed to assist the police in investigating suspected drug trafficking in Madison County in exchange for avoiding prosecution. After equipping Minter with a tape recorder and a twenty dollar bill, the police sent him to the residence of one Freddie Brooks to purchase crack cocaine. The police had Brooks' residence under surveillance for a number of weeks as a possible crack house.

Minter entered the Brooks' house and paid Walker $20.00 for a baggy of crack cocaine. This buy supplied the police with the necessary probable cause to obtain a search warrant for Brooks' residence. Pursuant to the search warrant, Brooks' residence was searched the next day. While executing the warrant, the police discovered Walker and another individual in a bathroom attempting to flush a plastic packet down the toilet. The contents of the packet field tested positive for cocaine.

Walker's trafficking charge was not based on the undercover buy. Rather, it was based on the police discovering him in the bathroom trying to flush away a packet of crack cocaine during the search of Brooks' residence.

Prior to trial, Walker moved to exclude any evidence that he had sold an illegal substance the day before the search warrant was executed. In response to the motion, the Commonwealth stated that it would not introduce the evidence. The Commonwealth reiterated this position in response to Walker's motion to discover the identity of the confidential informant (Minter), who allegedly purchased cocaine from Walker. The Commonwealth maintained that Walker was being prosecuted based solely on evidence obtained during the search and that revelation of the CI's identity was not necessary. The Commonwealth twice more reaffirmed that it would not use evidence of the controlled buy at Walker's trial, before reversing its position six days before trial.

As the Commonwealth explained at a pre-trial hearing on the issue, it decided to disclose Minter's identity and introduce evidence of the controlled buy because of an unfortunate turn of events involving a prospective witness, one Ruth Miller, who had entered into a plea agreement with the police. As part of the agreement, Miller agreed to testify against Walker. Specifically, her testimony was to be that Walker had been selling crack cocaine on the day of the search. But she recanted, failed to appear for sentencing, and could not be found. Thus, Miller's defection and disappearance caused the Commonwealth to re-evaluate its need to introduce the controlled buy evidence.

Walker objected on grounds that the controlled buy evidence was inadmissible under KRE 404(b). Additionally, Walker moved for a continuance, in the alternative, in order to prepare for the witness. The trial court ruled that the evidence was admissible only to show Walker's intent to sell and denied the continuance. Walker first argues that the trial court erred in allowing the Commonwealth to introduce evidence of the controlled buy.

### EVIDENCE OF OTHER CRIMES

■ Walker argues that the trial court should have excluded the evidence of the controlled buy under KRE 404(b), which provides in pertinent part:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent. . . .

The trial court admitted the evidence of the controlled buy on grounds that it was admissible to show Walker's intent to traffic in cocaine, *i.e.*, his intent to sell. Further, the trial court admonished the jury that the controlled buy only could be considered as proof of Walker's intent to traffic if the jury first found that Walker was in possession of the cocaine. On appeal, Walker argues that the evidence of the controlled buy was inadmissible to prove intent because intent was an element of the offense for which Walker was indicted. In other words, Walker's argument is that a prior bad act cannot be used to prove an ultimate issue in the case. We disagree.

■ Professor Lawson notes that under KRE 404(b), evidence of other crimes should be admitted to prove intent only when intent is in genuine dispute. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25, p. 98 (3d ed.1993). Of course, even when in dispute, a trial court

must still determine that the evidence is relevant to prove the intent to commit the crime charged. *Id.* Further, the evidence is subject to exclusion under KRE 403.

Under the instructions given in this case, to find Walker guilty of first-degree trafficking in cocaine, the jury had to believe beyond a reasonable doubt that: (1) Walker knowingly possessed cocaine; and (2) he possessed the cocaine with intent to sell it to another person. Walker did not testify and put on almost no defense. Rather, the defense based its strategy on discrediting the Commonwealth's witnesses in order to create reasonable doubt as to both possession and intent to sell. This is reflected in defense counsel's opening statement and closing argument and in Walker's motion for a directed verdict of acquittal.

■ We believe this attack on the sufficiency of the evidence placed the issue of intent to sell into dispute. As revealed in closing argument, Walker's defense basically was that he was merely present at the scene and could not be convicted based on a theory of guilt by association. The question of whether a "mere presence" defense creates a material issue as to the defendant's mental state is addressed in *United States v. Thomas*, 58 F.3d 1318 (8th Cir.1995). After noting that the issue was one of first impression within the circuit, the *Thomas* Court answered the question in the affirmative:

> When a defendant raises the issue of mental state, whether by a "mere presence" defense that specifically challenges the mental element of the government's case or by means of a general denial that forces the government to prove every element of its case, prior bad act evidence is admissible because mental state is a material issue.

\* \* \* \* \*

■ Because [the] "mere presence" defense raises the[ ] issues of intent and knowledge, admission of ... prior bad act evidence [is] not relevant solely to a propensity inference, and [is] therefore proper under Rule 404(b).

*Id.* at 1322, 1323.

In this case, the Commonwealth was required to prove intent to sell as a separate element of the crime charged. This alone was probably enough to place the issue of Walker's mental state in dispute. Walker's "mere presence" defense that attacked both the possession and intent to sell elements of the trafficking charge certainly placed the issue of intent to sell in dispute. Now, we examine whether the controlled buy evidence is relevant to the issue of intent to sell.

■ To be relevant, the controlled buy evidence must make it more probable that Walker intended to sell the cocaine in his possession. *See* KRE 401. The number of cases holding that prior sale evidence is relevant under the Federal Rules of Evidence to show intent to sell is legion. *See, e.g., United States v. Thomas*, 58 F.3d 1318 (8th Cir.1995), collecting cases; *United States v. Adrian*, 978 F.2d 486 (9th Cir.1992); *United States v. Hadfield*, 918 F.2d 987 (1st Cir.1990), *cert. denied*, 500 U.S. 936, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991), collecting cases; *United States v. Robison*, 904 F.2d 365 (6th Cir.1990), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990); *United States v. Harris*, 903 F.2d 770 (10th Cir.1990), *United States v. Hicks*, 798 F.2d 446 (11th Cir. 1986), *cert. denied*, 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987); and *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The *Beechum* Court well stated the reason that

such evidence is admissible under FRE 404(b):

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

*Beechum*, 582 F.2d at 911.

We hold likewise. The evidence of the controlled buy tended to make it more probable that Walker intended to sell the drugs in his possession.

Finally, we address Walker's argument that *Marshall v. Commonwealth*, Ky., 482 S.W.2d 765 (1972), requires reversal in this case. *Marshall* is easily distinguishable from the case at bar.

In *Marshall*, the defendants were convicted of possession of burglary tools and attempted breaking and entering in connection with an attempted break-in at a Lexington grocery store. *Id.* at 765. The trial court admitted evidence of prior crimes by the defendants as evidence of their intent to break into the grocery store, "to show that they were the kind of characters who would do such a thing, and were not hardy, honest citizens having a casual social visit in back of the market at 2:30 A.M. on a cold morning." *Id.* at 766. The prior crime evidence consisted of proof of convictions for disorderly conduct, receiving stolen property, drunkenness, carrying a concealed deadly weapon, burglary, storehouse breaking, grand larceny,

breach of peace, and knowingly receiving stolen goods. *Id.*

The possession of burglary tools charge required proof of both possession and intent to commit a crime. The attempted breaking and entering required proof of their intent to break into the market. Thus, intent was clearly at issue in the case. Nonetheless, the *Marshall* Court reversed:

> The best we can say for this evidence of past records is that it indicates that the appellants were men morally capable of burglarizing Griffith's Market at various times in their lives, but not that they necessarily intended to do it the night in question. Their specific intent on the night of the current crimes must be inferred from circumstances in which they were found at that particular time and place, and not from their past records.

*Id.* In other words, the *Marshall* Court concluded that the probative value of the other-crime evidence was scant in relation to its potential for undue prejudice.

The other crimes introduced in *Marshall* were diverse and at least some of them were far removed in time (more than eighteen years) from the crimes charged. As the *Marshall* Court determined, the evidence of prior crimes merely served to paint the defendants in a bad light and was simply evidence of their propensity to commit a crime. Not so in the instant case.

The evidence of the controlled buy related directly to the question of Walker's intention as to the cocaine the jury found Walker to be in possession of.[1] Further, the trial court tempered the prejudice inherent in the evidence by giving the jury an appropriate admonishment. Thus, the

---

1. We note that the question of whether the evidence had any relationship to the other element to the issue in the case, *i.e.*, whether Walker knowingly possessed the cocaine, is not at issue here.

danger of undue prejudice in the introduction of the evidence of the controlled buy did not substantially outweigh the probative value of the evidence. Therefore, we hold that the trial court did not abuse its discretion in admitting the control-buy evidence under KRE 404(b) or KRE 403.

### REASONABLE NOTICE

Walker argues that the Commonwealth failed to provide reasonable notice under KRE 404(c) of its intent to use the controlled buy as evidence at trial. Again, we disagree.

KRE 404(c) serves "to provide the accused with an opportunity to challenge the admissibility of this evidence through a motion *in limine* and to deal with reliability and prejudice problems at trial." *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 31 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999). Whether reasonable pre-trial notice has been given is decided on a case-by-case basis. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25, p. 106 (3d ed.1993).

In this case, in addition to being able to challenge the admissibility of Minter's testimony *in limine* on KRE 404(b) grounds, defense counsel was able to question Minter himself at the hearing. Further, the existence of a CI and the allegation of an illegal sale of drugs was not unknown to the defense, which minimized any surprise. Based on the facts of this case and in light of the purpose of the rule, we hold that the trial court did not abuse its discretion in finding that six days was reasonable notice.

### DIRECTED VERDICT

Walker argues there was insufficient evidence to convict him of first-degree trafficking, which entitled him to a directed verdict of acquittal. This argument is based on the admissibility of Minter's testimony and its alleged lack of credibility. But, we have already held that Minter's testimony was admissible. Further, the credibility of witness testimony is left to the jury to weigh. *Baker v. Commonwealth*, Ky., 973 S.W.2d 54, 55 (1998). There was no error.

### IRRELEVANT EVIDENCE

Next, Walker argues that a great deal of evidence concerning the circumstances surrounding the search of Freddie Brooks' house and evidence concerning the quantity of drugs, drug paraphernalia, and the use of drugs was erroneously admitted against him. The challenged evidence includes:

- Testimony concerning the police stakeout and search of Freddie Brooks' home including evidence of the number people seen entering and leaving the house.
- Testimony that Freddie Brooks' was found lighting a crack pipe when police executed the search warrant.
- Testimony that police officers found drugs and drug paraphernalia throughout Freddie Brooks' house and a videotape showing the same evidence.
- Expert testimony concerning other drugs in the house, *i.e.*, drugs with which Walker was not charged with possession of.
- Numerous references to "Freddie Brooks' drug emporium and distribution center."

On appeal, Walker argues that the above evidence was not relevant and should have been excluded. However, there was no objection to the evidence when it was introduced. Thus, the issue is not preserved. Nonetheless, Walker argues that the error was palpable under RCr 10.26

and is grounds for reversal. We disagree. The error, if any, is not palpable.

### PROSECUTORIAL MISCONDUCT

Walker's last argument is likewise not preserved. Again he argues palpable error. Again, we disagree.

Walker argues that the Commonwealth Attorney made numerous and inflammatory attacks on defense counsel and defense strategy during closing argument. Upon review of the argument, we do not believe that the prosecutor went beyond the reasonable latitude given to counsel during closing argument. *See Lynem v. Commonwealth*, Ky., 565 S.W.2d 141, 144–45 (1978). There was no error.

For the reasons set forth above, the judgment of the Madison Circuit Court is hereby affirmed.

LAMBERT, C.J., COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I take issue with the majority opinion's finding that no palpable error exists from the inclusion of an enormous amount of irrelevant evidence. I believe the evidence was excessive, massively irrelevant, and prejudicial, and as a result would hold that its admissibility at trial constituted a manifest injustice.

As the majority recounts, there was myriad evidence presented characterizing Freddie Brooks' house as a "drug emporium and distribution center." In addition, the Commonwealth introduced testimony regarding other drugs found in the house at the time of Walker's arrest—drugs which had no bearing on Walker's trafficking charge. KRE 401 defines relevant evidence as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I agree with Appellant when he argues that rampant drug use in Freddie Brooks' house does not tend to make the existence of the fact that Walker flushed crack cocaine down the toilet or that he was tampering with evidence any more probable than without the evidence.

No doubt this plethora of evidence was presented in an effort to inflame the jury, and convict Walker of guilt by association. He was hanging out in a "crack house," therefore he must be a drug dealer. The relevance of this evidence to the question of whether Walker intended to sell the crack cocaine that he flushed down the toilet, or whether he was tampering with evidence is lost on me. Even if the evidence is relevant, it still should not have been admissible because KRE 403 allows the exclusion of even relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice."

I believe the majority might even agree that the admission of such evidence constituted an abuse of discretion by the trial judge. However, the issue is not preserved and therefore the majority does not address it at all. I believe the fact that the error was not preserved is the true irrelevancy here. Without this evidence, the Commonwealth would be left with evidence of Walker standing over a flushing toilet, from which the police later recovered crack cocaine. Therefore, I believe the verdict may have been different but for the inclusion of this evidence. *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969). As a result, I would hold the trial court committed palpable error in admit-

ting the irrelevant testimony regarding the drug-dealing transactions in the Brooks' household, and I would hear this issue on its merits.