RENDERED:  DECEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1179-MR

WILLIE JAMES SMITH                                    APPELLANT


APPEAL FROM BELL CIRCUIT COURT
v.        HONORABLE ROBERT V. COSTANZO, JUDGE
ACTION NOS. 16-CR-00158 AND 16-CR-00391


COMMONWEALTH OF KENTUCKY                              APPELLEE


OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  KRAMER, LAMBERT, AND K. THOMPSON, JUDGES.

KRAMER, JUDGE:  Willie James Smith was convicted of two counts of first-degree trafficking in a controlled substance (methamphetamine), one count of first-degree trafficking in a controlled substance (hydrocodone), third-degree trafficking in a controlled substance (clonazepam), third-degree possession of a controlled substance (alprazolam), one count of use of drug paraphernalia, and operating a

motor vehicle under the influence. He received a PFO-enhanced sentence of nineteen years' imprisonment.

Smith presents the following issues: (1) whether the trial court erroneously permitted the Commonwealth to introduce the content of telephone calls he made while in jail, thereby violating KRE[1] 404(b), KRE 404(c), and the hearsay rule pursuant to KRE 802, and also without proper authentication of the calls; (2) whether data retrieved from cell phones seized from Smith at the jail was properly admitted; (3) whether the trial court improperly instructed the jury; (4) whether misdemeanor fines were improperly imposed; and (5) whether the trial court erroneously imposed a sentence on a charge of which he was acquitted. Smith admits only the cell phone data issue was properly preserved and requests palpable error review for the remaining issues. Having reviewed the record, we affirm in part, vacate in part, and remand for entry of a new judgment.

Smith was given a single jury trial in Bell Circuit Court on three separate incidents described in two separate indictments: 16-CR-00158, arising from a traffic stop on October 16, 2015; 16-CR-00391, arising from a traffic stop on April 8, 2016; and also included in 16-CR-00391 was a charge arising from an alleged undercover narcotics purchase on June 23, 2016.

---

[1] Kentucky Rules of Evidence.

On October 16, 2015, Trooper Kurt Lowe of the Middlesboro Police Department observed a car operated by Smith run a stop sign and then pull into a Taco Bell restaurant. He then observed Smith make a wide right turn as he left Taco Bell. At that point, Lowe conducted a traffic stop. He testified Smith had slurred speech and glassy eyes. Lowe then asked Smith to get out of the car and perform field sobriety tests. Lowe testified he conducted a *Terry*[2] frisk for safety purposes and found $1,881 in cash on Smith in the following denominations: six $100 dollar notes, two $50 dollar notes, forty-eight $20 dollar notes, thirteen $10 dollar notes, twelve $5 dollar notes, and thirty-one $1 dollar notes.

Lowe testified that, during the horizontal gaze nystagmus portion of the field sobriety tests, he observed a blue, powdery residue in Smith's right nostril. Based on Lowe's observations and Smith's performance on the field sobriety tests, Smith was arrested for operating a motor vehicle under the influence. Lowe took him into custody and to the hospital for a blood test.

Upon reaching the hospital for the blood test, Lowe found that Smith had removed his boots, causing him to suspect Smith had contraband on his person. The boots were inspected, and nothing was found inside them. Nonetheless, Lowe still suspected contraband, so he arranged a strip search of Smith when they arrived at the jail after the blood test. That search was conducted

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

by Deputy Jailer Taylor. Taylor testified that prior to the search, he asked Smith if he had anything illegal on his person and Smith responded: "I do, I have something that's going to put me away for a while." Smith then reached into his boxers and pulled out a plastic bag containing what looked like methamphetamine. Taylor instructed Smith to "squat and cough" and at that point retrieved a second baggie containing what appeared to be hydrocodone and clonazepam.

While Smith was being searched, Lowe stood at the counter in the booking area. In front of him were two cell phones seized from Smith at the jail. Lowe testified that one of the cell phones repeatedly alerted with incoming text messages, and he looked at the screen when the phone lit up and saw a message from a woman wanting something "on credit." Warrants were obtained to search the phones, and Lowe sent the phones to the Kentucky State Police (KSP) electronic crimes laboratory for a forensic examination.

A KSP forensic chemist testified that the first item seized during the search was found to be 13.994 grams of methamphetamine. The four white tablets in the second item had marking and trade dress consistent with hydrocodone, and the nine and one-quarter blue tablets found in the third item had marking and trade dress consistent with clonazepam. A forensic biologist detected the presence of Xanax (the brand name of alprazolam), methamphetamine, amphetamine, and a metabolite of marijuana in Smith's blood.

In his defense, Smith testified that on October 16, 2015, *i.e.*, the date he was pulled over, he spent the day installing a subwoofer in a car for which he received $1,000; this accounted for most of the money that was in his possession. Smith stated the rest of the funds were his Christmas savings. He also testified that he found methamphetamine and pills under the back seat of the car on which he had worked. Smith testified that he snorted the pills and was under the influence when he was pulled over. Smith testified that he used three to five grams of methamphetamine per day, and he intended to use the methamphetamine he found.

The April 8, 2016 case arose after Lowe once again initiated a traffic stop of Smith. Lowe testified he was patrolling the neighborhood because residents suspected drug trafficking and requested an increased police presence in the area. Lowe stopped Smith because his license plate was not illuminated. Smith consented to a search of his person, but Lowe did not find any drugs or contraband. Smith then consented to a search of the vehicle. Lowe testified he found needles and syringes in the headliner, a small clear bag of suspected methamphetamine near the front passenger seat, and digital scales on the floor in the rear of the passenger area. Smith and his passenger both denied ownership of the items and were arrested. The owner of the car would later testify that the paraphernalia found was hers.

Lowe then conducted a search incident to arrest. Lowe noticed a hole cut in the zipper area of Smith's pants and found a small black jewelry bag tied to the zipper. The bag contained a white crystalline substance and blue tablets inside a container. Smith also had cash totaling $972 in his possession.

A KSP laboratory technician testified that the bag attached to Smith's zipper contained 12.319 grams of methamphetamine. Eight of the blue tablets were visually identified as having markings and trade dress consistent with a pharmaceutical preparation of Xanax, while four of the blue tablets were visually identified as being a non-controlled substance.

Evelyn Roberts, an acquittance of Smith's and a recovering addict at the time of trial, testified that the car Smith drove on April 8, 2016, was hers and the needles, syringes, and digital scales found in the car belonged to her. She also testified that when addicted, she could use up to seven grams of methamphetamine a day.

Jason Peace testified that during the first week in April 2016, he purchased a car from Smith and paid him $1,000 cash. Smith testified that the $972 found on him when he was arrested on April 7, 2016, was the proceeds of that sale.

Smith denied knowing the scales and needles were in the car. He acknowledged that there were 13 grams of methamphetamine in the baggie hidden

inside his zipper and told the jury he intended it for his personal consumption. Smith testified that he was not a drug dealer but admitted being a drug addict.

As noted, Smith was also charged with trafficking arising from an alleged undercover buy on June 23, 2016. The police wired a confidential informant (CI) with a pocket recorder, gave him forty dollars, and dropped him off near Smith's home with instructions to purchase narcotics. The CI purchased twenty dollars of methamphetamine from Smith. An audio recording of the transaction was introduced. In that recording, the CI can be heard referring to Smith as "Jim Bob" and "Red" and there was discussion about drug trafficking and drug use. At trial, the CI equivocated regarding the identity of the person who sold him the methamphetamine.

The Commonwealth sought to introduce text messages and photographs retrieved from the cell phones seized from Smith at the jail through Sergeant Bill Collins, a digital forensics supervisor at the KSP electronic crimes laboratory. Smith objected arguing that he had not been provided notice under KRE 404(b)-(c) nor notice of what specific items within the voluminous discovery from the cell phones the Commonwealth intended to introduce. Smith also objected to the use of any messages outside the October 15-16, 2015 dates based on relevancy. He argued there was no proof that prior to that time he had exclusive

-7-

possession of the phones. The trial court limited the Commonwealth to a two-week period ending October 16, 2015.

Collins testified about communications recovered from the phone from October 2, 2015 through October 16, 2015. He testified that the texts contained numerous slang references to drugs as well as explicit references to drugs including: "Do you got strips?" "Red I need drugs." "Red plz I need drugs." "Red need a dime and a strip if possible." "You got any ice cream?" Photographs of what appeared to be drugs were also introduced. Collins testified that there were 18 different user accounts on one of the phones seized, two of which had indicators relating them to Smith. He acknowledged he could not tell who had actually operated the phone at any given moment.

In response to his denial of being a drug dealer, on cross-examination the prosecutor read to Smith the alleged substance of telephone calls Smith made to his girlfriend while he was in jail. After asking Smith about his daughters and their ages, the oldest being twenty-four years old, the prosecutor asked Smith if he ever sold drugs to a twenty-four year old, which Smith denied. She then asked, "So on May 12, 2017, at 7:25 p.m. did you have a conversation with your girlfriend concerning what Lachelle[3] and your daughter owe you?" Smith answered, he did not recall. The prosecutor then asked, "You don't recall that?

---

[3] We note that Lachelle is not the CI's name.

Specifically, at 7:26 p.m., a female says, 'Okay, I know that Lachelle owes fifty-five and uh your daughter owes fifty, right?' You say, 'Yeah.' Do you recall saying that?" Smith replied, "No, ma'am." The prosecutor then asked Smith if he denied saying it and Smith answered that he did not recall saying it. The prosecutor reiterated, "So you don't deny it?" Smith answered, "I can't deny or say I did, if I don't recall it."

The Commonwealth continued reading more of the alleged out-of-court conversation, and Smith continued to deny his recollection of it. In addition to the above conversation which appeared to be about his daughter's debt, the prosecutor also introduced what it claimed were two additional calls:

> Commonwealth: And on May 13, 2017, you make a telephone call to your girlfriend again, at 5:06 p.m. And do you recall having a conversation regarding a vehicle in the garage downstairs that you were having someone work on? Do you recall that?
>
> Smith: No.
>
> Commonwealth: Specifically, girlfriend says, "Okay, I don't know. They're not making very much progress, as far, as like, doing anything." And then you say, "I'm just trying to give them a dope bump every day." Do you recall saying that?
>
> Smith: A what?
>
> Commonwealth: A "dope bump every day." Do you recall saying that?
>
> Smith: No.

Commonwealth:  Do you deny saying it?

Smith:  I don't recall saying it.

Commonwealth:  And on May 14, 2017, at 12:47 p.m. you make another call to your girlfriend and you have a conversation where she doesn't want to talk about things, but you then say, "To call them other things."  Do you recall having that conversation?

Smith:  No, ma'am.

Commonwealth:  Specifically, at 3:45 minutes into that recording girlfriend says, "Look, she gave me-God, I hate talking about this on the phone, I hate this phone."  You then say, "You know, nickels, dimes, quarters and dollars?"

Smith:  Money, yeah.

Commonwealth:  Do you recall saying that?

Smith:  No, I don't recall.

Commonwealth:  Do you deny saying it?

Smith:  I don't recall it.  I don't understand the relevance to May 12, 2017 to 16—

Commonwealth:  And all those calls, Mr. Smith, were about drugs, were they not?

Smith:  Well, I guess if you assume they are, they are. I mean, I don't recall—

Commonwealth:  And in fact you trafficked in drugs, Mr. Smith.

Smith:  No, not in fact, ma'am.

In closing argument, the Commonwealth discussed the calls and argued it was more likely that Smith intended to traffic the drugs found during both traffic stops, rather than ingest them himself, because he talked like a drug dealer. Further, the prosecutor repeated to the jury that in the alleged jail call about his daughter owing him money and then stated, "[Smith] goes into how he paid for it, how much he's getting out of it and what's left and what his daughter-daughter!-owed them." After repeating the girlfriend's statements regarding the vehicle being repaired, Smith's alleged "dope bump" statement, the girlfriend's statement regarding money, and Smith's response, the Commonwealth stated:

> Code words, code words for trafficking. [T]he jail calls were never introduced to prove that [Smith] was trafficking at the time. Rather, again, it's introduced to prove the totality of the circumstances. He's a drug dealer. And that's why in the beginning I said I'd come back before you and ask you to find him guilty on it, and that's what I'm doing. After everything, he's a drug dealer.

Smith was found guilty on all charges related to the 2015 stop. The jury recommended a sentence of fifteen days and a $250 fine for driving under the influence, six years for first-degree trafficking (methamphetamine) enhanced to ten years for PFO-I, three years for trafficking (hydrocodone), ten months and a $400 fine for third-degree trafficking (clonazepam), and six months and a $250 fine for use of drug paraphernalia. With regard to the 2016 stop, the jury convicted Smith of first-degree trafficking (methamphetamine) and recommended a sentence of six

-11-

years and a $250 fine. He was acquitted of possession of drug paraphernalia under Count VIII. However, after some confusion reading the verdicts, the trial court instructed the jury to fix a punishment for Count VIII. The jury thereafter recommended a sentence of six months and a $250 fine. Despite the recommendation of the fines, the trial court did not impose any of the fines in the final judgment and sentence, and all sentences were ordered to run consecutively. Smith's total sentence was nineteen years' imprisonment.

On appeal, Smith argues that the prosecutor's questioning Smith about the alleged jail phone calls was error. He argues that the calls were inadmissible under KRE 404(b) as evidence of other crimes, wrongs, or acts, he did not receive proper notice under KRE 404(c), and any possible relevance was outweighed by undue prejudice. Smith further argues that the content of the conversation between him and his girlfriend, as read to the jury by the prosecutor, was inadmissible hearsay under KRE 802 and that the calls were not properly authenticated. Smith concedes his arguments are unpreserved and requests review pursuant to RCr[4] 10.26:

> A palpable error which affects the substantial rights of a
> party may be considered by the court on motion for a
> new trial or by an appellate court on appeal, even though
> insufficiently raised or preserved for review, and
> appropriate relief may be granted upon a determination
> that manifest injustice has resulted from the error.

---

[4] Kentucky Rules of Criminal Procedure.

The concept of "manifest injustice" is "the key emphasis in defining . . . a palpable error under RCr 10.26[.]" *Johnson v. Commonwealth*, 405 S.W.3d 439, 457 (Ky. 2013). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). "Thus, what a palpable error analysis 'boils down to' is whether the reviewing court believes there is a 'substantial possibility' that the result in the case would have been different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (quoting *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003)).

Smith defended the trafficking charges on the basis that he did not intend to sell the drugs found on his person but rather possessed them for his personal use. The Commonwealth argues that the content of the jail phone calls was admissible because it was "highly indicative of drug trafficking" and "probative evidence on the issue of whether Smith possessed with the intent to use or distribute." (Appellee's Brief at 18.)

We understand the Commonwealth's argument, but we are nonetheless concerned about the highly questionable method by which the prosecutor introduced this evidence. KRE 404(c) requires that the Commonwealth provide reasonable pretrial notice to the defendant of its intent to introduce possible KRE 404(b) evidence at trial. Here, the record is devoid of any evidence

-13-

that such notice was given.  In its brief to this Court, the Commonwealth merely argues that the required notice would not have "changed how the line of questioning went." (Appellee's Brief at 19.)  That assertion is speculative and does not satisfy the Commonwealth's obligation to give the defendant reasonable notice of KRE 404(b) evidence that will be introduced.

We are also concerned about how the substance of the jail phone calls was presented to the jury without even an attempt to authenticate those calls under KRE 901.  The prosecutor merely read from notes that purportedly contained the content of the phone calls.  The prosecutor did not provide any explanation for the notes, say who prepared the notes, or call a law enforcement officer or jail employee to verify the process for recording, assessing, or duplicating jail phone calls.  Essentially, the prosecutor acted as a witness to the content of the out-of-court conversations used against Smith.  It is not appropriate for the prosecutor to act as a witness. *See Dillon v. Commonwealth*, 475 S.W.3d 1, 19-20 (Ky. 2015).

For these reasons alone, the trial court should not have permitted the prosecutor to read from notes which purported to contain the content of the jail phone calls.  However, that leaves the question as to whether the error was palpable regarding the trafficking charges.  After serious consideration, we conclude it was not.  Smith did not deny possession of the drugs, and his sole defense was to assert he merely intended to consume those drugs rather than traffic

-14-

in them. However, Smith was found on two occasions with significant quantities of drugs and cash, and on one occasion with a digital scale. Despite Smith's protestations and witness testimony alleging otherwise, when these items are found together they frequently amount to substantial evidence of drug trafficking activities. *See*, *e.g.*, *Commonwealth v. Carman*, 455 S.W.3d 916, 919 (Ky. 2015); *Johnson v. Commonwealth*, 277 S.W.3d 635, 640 (Ky. App. 2009); *Simpson v. Commonwealth*, 159 S.W.3d 824, 828 (Ky. App. 2005).

Smith was also apprehended with multiple cell phones in his possession, which is also frequently indicative of drug trafficking. *See*, *e.g.*, *United States v. Meadows*, 822 F. App'x 434 (6th Cir. 2020). The evidence against Smith at trial also included a recorded controlled purchase of drugs from Smith by a confidential informant, testimony that Smith's nickname was "Red," and text messages on Smith's cell phone stating, *inter alia*, "Red I need drugs." Based on the aforementioned standard of review for palpable error, we cannot say there was a "substantial possibility that the result[,]" *i.e.*, Smith's convictions for drug trafficking, "would have been different without the error." *Brewer*, 206 S.W.3d at 349 (internal quotation marks and citation omitted).

We also cannot say that the error resulted in a manifest injustice regarding Smith's remaining convictions. Smith's alleged intent to traffic drugs was not an element on the possession charges, the paraphernalia charges, or

operating a motor vehicle under the influence. Therefore, the jury did not use the improperly admitted evidence to convict Smith on those charges and there is not a substantial probability that the result would have been different. *Id.*

For his second issue on appeal, Smith argues the trial court erroneously admitted data retrieved from the cell phones seized from Smith at the jail. This issue is preserved. The admission of the text messages obtained from Smith's phone is an evidentiary issue that is reviewed for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). The test for abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

The cell phone data was retrieved from Smith's cell phones seized on the day of his arrest on October 16, 2015, and the trial court limited admission to data ranging from October 2, 2015 through October 16, 2015. Smith undeniably had access to the cell phones. The fact that Smith was contacted by individuals to buy and sell drugs and there were pictures of drugs on the cell phones close in time to his being found in possession of drugs is relevant to the issue of intent. *Walker v. Commonwealth*, 52 S.W.3d 533, 536 (Ky. 2001). Smith argues that while that may be true, there was no evidence that the cell phones were not being used by other people during the same time period.

The fact that others may have had access to Smith's cell phones prior to October 15, 2015, when they were seized at the jail does not preclude their admission. The fact that the cell phones may not have been in Smith's exclusive possession goes to the weight the jury gives the evidence, not its admissibility. Furthermore, many of those text messages were addressed to "Red" which, as the confidential informant testified, was Smith's nickname. Given that Smith denied he intended to distribute the drugs he possessed, the trial court did not abuse its discretion in determining that the probative value was not outweighed by the prejudicial effect. KRE 403.

Although Smith knew his cell phones were seized and was provided with the forensic report in discovery, he argues that he was not given specific, written notice of the Commonwealth's intent to offer the cell phone data as evidence. In *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005), the Court explained that "where the accused has received 'actual notice' of the intention to introduce KRE 404(b) evidence and the accused has suffered no prejudice, the notice requirement in KRE 404(c) is satisfied." (Citations omitted.) We deem Smith to have received actual notice in this case. His cell phones were seized when he was arrested, and those same cell phones were then searched pursuant to a validly executed warrant in November 2015, approximately two and one-half years before his trial. Through discovery, Smith also received a forensic

report detailing the police findings regarding his cell phones. Although Smith did not file a motion *in limine* to challenge the admissibility of the evidence, the record reflects he had ample opportunity to do so. *Id*. at 20. The trial court did not abuse its discretion in allowing the cell phone evidence.

For his third issue on appeal, Smith argues that the jury instructions on the three trafficking charges were erroneous. He concedes the errors are unpreserved. Smith does not claim that the first-degree trafficking instructions should not have been given but that the instructions were not given correctly. He asserts "[e]rroneous jury instructions are presumed to be prejudicial[,]" quoting *Carver v. Commonwealth*, 328 S.W.3d 206, 210 (Ky. App. 2010).

KRS[5] 218A.1412(1) contains the elements of first-degree trafficking in a controlled substance, a Class C felony: "A person is guilty . . . when he or she knowingly and unlawfully traffics in . . . two (2) grams or more of methamphetamine[.]" KRS 218A.1412(1)(b). A person is guilty of a Class D felony when that person knowingly and unlawfully traffics in "[a]ny quantity of a controlled substance specified in paragraph (a), (b), or (c) of this subsection in an amount less than the amounts specified in those paragraphs." KRS 218A.1412(1)(e) and (3)(b). The instructions on the two trafficking counts for methamphetamine merely stated that Smith could be convicted if "he had in

---

[5] Kentucky Revised Statutes.

-18-

possession a quantity of methamphetamine, a controlled substance." However, during the penalty phase, the jury was instructed on a range of five to ten years for both charges, the penalty range for a Class C felony.

Smith was also convicted of first-degree trafficking in a controlled substance (hydrocodone). Under KRS 218A.1412(1)(c), trafficking in hydrocodone is punishable as a Class C felony if the defendant traffics in "[t]en (10) or more dosage units of a controlled substance that is classified in Schedules I or II and is a narcotic drug, or a controlled substance analogue[.]" As noted above, the punishment for trafficking in hydrocodone is lowered to a Class D offense for a lesser quantity of the drug. KRS 218A.1412(1)(e) and (3)(b). The jury was instructed to find Smith guilty if "he had in his possession a quantity of Hydrocodone, a Schedule III narcotic." During the penalty phase, the jury was instructed to sentence Smith for a term of one to five years on this charge.

These instructions were erroneous in that the trafficking charges should have mirrored the elements of KRS 218A.1412, including the amounts of each drug at issue. "[An] instruction is sufficient so long as it accurately incorporates all the elements of the crime and requires the jury to find each element before it finds a defendant guilty." *Martin v. Commonwealth*, 409 S.W.3d 340, 347 (Ky. 2013). With the methamphetamine-related charges, the trial court should have instructed the jury to recommend Class C penalties only if Smith were

found to have trafficked in more than two grams of the substance, not "a quantity." The instruction on trafficking in hydrocodone was also flawed. Not only was no specific quantity of the substance included, but hydrocodone is a Schedule II narcotic, not Schedule III. 902 KAR[6] 55:015 § 2; 21 CFR[7] § 1308.12.

Erroneous jury instructions are presumed to be prejudicial, but they are also subject to harmless or palpable error analysis. *Owens v. Commonwealth*, 329 S.W.3d 307, 317 (Ky. 2011). Harmless or palpable error analysis may also apply to instructions such as those in the case *sub judice*, which omit essential elements of the offense. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018).

Here, Smith was punished for two counts of trafficking in methamphetamine as a Class C offense, meaning each count would have to involve more than two grams of methamphetamine. The record reflects Smith was apprehended with over thirteen grams in one of the charged incidents, and over twelve grams in the other. Furthermore, Smith's defense at trial did not center on the amount of drugs recovered but instead focused on whether he had intent to traffic those drugs. Indeed, in his brief before this Court, Smith admitted he was apprehended with thirteen grams of methamphetamine. (Appellant's Brief at 6.)

---

[6] Kentucky Administrative Regulations.

[7] Code of Federal Regulations.

Therefore, the evidence as to the amounts of methamphetamine presented at trial supported punishment on each count as a Class C felony—which is what the jury ultimately did.

Similarly, although the instruction for trafficking in hydrocodone did not explicitly provide that Smith trafficked less than ten dosage units, the jury nonetheless appropriately fixed the sentence at three years, the middle of the range appropriate for a Class D offense. The penalty for the offense is supported by the evidence in the record, wherein a KSP forensic chemist testified that four pills found upon Smith appeared to be hydrocodone. In sum, although the instructions were undoubtedly flawed, they were not palpably erroneous. "In recognizing that the proof presented at trial was sufficient to sustain Appellant's conviction . . . we reiterate our conclusion that the instructions, while defective, affected no substantial rights of Appellant and resulted in no manifest injustice." *Owens*, 329 S.W.3d at 317 (citation omitted).

For his fourth issue, Smith contends that because he was indigent and appointed a public defender, fines for his misdemeanor convictions could not be imposed pursuant to KRS 534.040. For this issue, however, the Commonwealth correctly points out that, although the jury recommended fines for Smith's misdemeanor convictions, the trial court's final judgment does not impose fines on Smith. "Circuit courts speak only through written orders entered upon the official

record." *Oakley v. Oakley*, 391 S.W.3d 377, 378 (Ky. App. 2012) (internal quotation marks and citation omitted). Because the trial court did not impose fines, there is no error to review on this issue.

For his final issue on appeal, Smith contends he was assessed a penalty upon a charge for which he was acquitted. A review of the record substantiates Smith's argument. Although Smith was acquitted of the drug paraphernalia charge arising from the 2016 stop (Count VIII), the trial court's final judgment imposes a penalty of six months' incarceration for that charge. The Commonwealth concedes the issue, stating that because the jury did not convict Smith on the charge, his resulting conviction and sentence must be vacated. We agree and vacate that portion of Smith's sentence.

For the foregoing reasons, we vacate Smith's conviction and sentence for one count of possession of drug paraphernalia because the jury acquitted him of that charge. We affirm Smith's remaining convictions and remand for entry of a new judgment not inconsistent with this Opinion.

LAMBERT, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS IN PART, CONCURS IN PART, AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING IN PART AND CONCURRING IN PART: Respectfully, I dissent.

I write separately to express my disagreement with the majority decision to affirm the convictions on the trafficking counts on the basis that reading from supposed transcripts of telephone calls Smith made to his girlfriend while in jail was not palpable error.

I agree with the majority Opinion that the jailhouse phone calls were introduced in a highly questionable manner with a clear failure to comply with Kentucky Rules of Evidence (KRE) 404(c), lack of authentication pursuant to KRE 901, and essentially allowed the prosecutor to act as a witness to the content of the out-of-court conversations.

I am perplexed by the majority Opinion's failure to address directly whether these conversations were prohibited pursuant to KRE 404(b) because they were used to "prove the character of [Smith] in order to show action in conformity therewith." I believe these conversations were directly used "to show a propensity or predisposition to again commit the same or a similar act" which is prohibited under the rule. *Southworth v. Commonwealth*, 435 S.W.3d 32, 48 (Ky. 2014). *See Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992) (explaining a defendant may not be convicted on the basis of having a criminal predisposition); *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994) (explaining KRE 404(b) must be strictly construed to eliminate evidence of criminal propensity towards a specific crime). Additionally, the conversations constituted hearsay which should

have been excluded pursuant to KRE 802 because through them the Commonwealth was attempting to establish the truth of the content of the jail phone calls to show that Smith was a drug dealer.

I disagree with the majority Opinion that this error which violated multiple rules was not palpable. The majority Opinion focuses on Smith's failure to deny that he possessed the drugs and focuses on his sole defense being that he planned to consume rather than traffic in the drugs and then casts aspersions on this defense. The majority Opinion asserts that there was substantial evidence of drug trafficking in this case, noting: on two occasions Smith was found with significant quantities of drugs and cash; on one occasion Smith was found with a digital scale; Smith was found with multiple cell phones which is indicative of drug trafficking; and the confidential informant identified Smith as "Red" and there were text messages on the phones for "Red."

While this evidence indeed exists, there was also contradictory evidence on many of these points from witnesses other than Smith himself. As to the 2016 charges, Evelyn Roberts testified that the needles, syringes, and digital scales in the car were hers, which potentially subjected her to criminal charges. Smith denied knowing the scales and needles were in the car, and the jury must have at least been partially persuaded by this argument as the jury acquitted Smith of the possession of drug paraphernalia charge.

As to the significant quantities of cash, Smith indicated the first quantity of cash from the 2015 arrest was the result of him being paid to install a subwoofer. As to the second quantity of cash from the 2016 arrest, Jason Peace testified that he purchased a car from Smith and paid $1,000 in cash the first week in April 2016, which was shortly before Smith was arrested on April 7, 2016, and found to have $972 in cash. Smith testified this amount was the proceeds of that sale.

As to the testimony by the confidential informant, at trial the confidential informant equivocated as to the identity of the person who sold him methamphetamine. While certainly there was a connection to Smith possibly being "Red" and "Red" was referenced on text messages in which drugs were sought, this proof is not as straightforward as the majority Opinion implies.

The jail phone calls were read to the jury for the explicit purpose of establishing that Smith was a drug dealer. Over and over, the prosecutor read from the transcript to establish that Smith sold drugs at other times and to other people, including Smith's daughter. The prosecutor also repeated portions of these conversations in closing argument to persuade the jury to convict Smith of all of the counts of trafficking. Use of the transcripts in this manner was highly prejudicial.

In *Jones v. Commonwealth*, 567 S.W.3d 922, 927 (Ky.App. 2019), the Commonwealth was allowed to admit evidence that the defendant had a prior trafficking conviction to establish knowledge or absence of mistake so that the jury could infer that the sheer quantity of drugs involved meant the defendant was trafficking. In reversing, the Court found that although this evidence was marginally relevant to prove absence of mistake, it was more prejudicial than probative and improperly relied upon to establish intent to traffic because it could not qualify to establish a common scheme or plan where there was no "factual commonality between the prior bad act and the charged conduct 'that is simultaneously similar and so peculiar or distinct that there is a reasonable probability that the two crimes were committed by the same individual.'" *Id.* (quoting *Clark v. Commonwealth*, 223 S.W.3d 90, 97 (Ky. 2007)). The Court declined to find this error harmless, "given the less-than-overwhelming evidence proving [the defendant]'s intent to traffic[.]" *Id.* The same reasoning should apply here. I believe there is a substantial probability that the result on the trafficking convictions would have been different had this clearly inadmissible evidence not been permitted and would have reversed those convictions.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Newberg, II
Assistant Attorney General
Frankfort, Kentucky